IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIANCA WILLIAMS | : | |
| | : | |
| Plaintiff, | : | C.A. No. |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| CHEER INC. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

## THE PARTIES

1. Plaintiff, Bianca Williams ("Plaintiff") was at all times relevant to this complaint a resident of Dover, Delaware.

2. Defendant, CHEER INC. ("Defendant" or "Cheer") is a public corporation organized and existing under the laws of the State of Delaware. Its registered agent is Sussex County Senior Services, Inc. 546 S. Bedford Street, Georgetown, DE 19947.

## JURISDICTION

3. This Court has jurisdiction based upon the existence of a question arising under the laws of the United States of America. This action arises under Title VII, of the Civil Rights Act of 1954, 42 U.S.C. §2000e, et.seq., as amended by the Civil Rights Act of 1991, §704 of Title VII. Accordingly, this Court has jurisdiction over the controversy based upon the provisions of 42 U.S.C. §2000e-5(f)(3) as well as 28

U.S.C. §§1331 and 1334. In addition, the action is also brought pursuant to The Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 et seq.

## VENUE

4. The unlawful employment practices alleged herein were committed within the State of Delaware. Accordingly, venue lies in the United States District Court for the District of Delaware under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to the filing of this action, the plaintiff timely filed a written charge of race discrimination, disability discrimination, and retaliation with the Delaware Department of Labor and the Equal Employment Opportunity Commission on January 24, 2020 which occurred during her employment with Cheer.

6. On or about June, the United States Department of Justice issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff on or about June 17, 2021. *Right to Sue Notice a*ttached as Ex. 1.

## FACTS

7. Plaintiff was hired on or around February 2018 as a Placement Coordinator. Later on, Plaintiff would be demoted to Certified Nursing Assistant working part-time.

8. Plaintiff is a 41-year-old African American female.

9. On or around November 2018, Plaintiff's supervisor Debbie Joseph began making numerous racial and gender discriminatory remarks directly at Plaintiff.

10. During one incident, Joseph commented in front of the entire staff that she believed Plaintiff only had one child and if she had known that Plaintiff had more than one child she would have never hired her.

11. Joseph also made clear about her animus towards Plaintiff having children by referencing her as the "old woman who lives in a shoe".

12. Joseph has also referred to Plaintiff as "Mother Goose" making reference to Plaintiff's children.

13. During one incident, Joseph made comments about Plaintiff's new jacket. Plaintiff stated that at first she was going to purchase a black jacket but decided to get another color. Joseph responded "why, because the black one blends with your skin and we can't see you."

14. Plaintiff informed Joseph that she did not appreciate such comments.

15. After Plaintiff's complaint of discrimination against Joseph, a meeting was held between HR Director Nancy Dodd, Joyce Weastin, Beckett Wheatly, and Sandy Baynard.

16. During the meeting, Joseph denied everything and nothing else was done.

17. No investigation was conducted into the complaints of discrimination.

18. Pursuant to Cheer's policies and procedures, Plaintiff reported the incident to human resources director Nancy Dodd.

19. After Plaintiff reported the above hostile work environment and discriminatory statements of Joseph, Joseph retaliated against Plaintiff by prohibiting her from making up work hours – as opposed to employees who did not report discrimination against Joseph.

20. It was Cheer's policy to allow employees to make up missed work hours that an employee missed.

21. Not allowing Plaintiff to make up hours has forced Plaintiff to expend all her earned vacation time.

22. In March 2018, Plaintiff informed human resources that she would need to file FMLA leave to care for her minor son.

23. Joseph complained to Plaintiff about her "childcare issues".

24. However, Plaintiff did not have childcare problems, she was taking legitimate approved medical leave to care for her child with a disability.

25. Plaintiff was granted intermittent FMLA leave to care for her minor child.

26. After Plaintiff took FMLA leave, Joseph confronted Plaintiff and asked if she thought that work was optional.

27. Plaintiff informed Joseph that taking time to care for her child with disabilities was not optional.

28. However, Plaintiff was told she could not make up any hours on the weekend.

29. Other co-workers were able to make up hours on the weekend that they missed during the week.

30. Defendant refused to allow Plaintiff the courtesy of making up hours on the weekend because of her prior complaint of discrimination and request for FMLA leave.

31. Plaintiff's salary was reduced from $32,500.00 annually to $12.00 an hour.

32. In addition, Joseph disciplined Plaintiff for minor infractions that other employees were not punished for as direct result of her prior complaints of discrimination.

33. Joseph's actions created a hostile work environment based on race and gender discrimination for Plaintiff.

34. Joseph instructed Plaintiff to stop her "sister talk" regarding communications with two other African American employees.

35. Joseph stated that all three women get loud when speaking to each other referring to black women.

36. Joseph's prejudicial attitudes also come out in other ways; she refers to Kent Sussex Industries[1] employees with disabilities as the "Special Olympics".

37. Plaintiff told Joseph that she did not find the remark funny since she has a child with disabilities and she supports their mission.

38. There were times when Joseph denied Plaintiff FMLA leave based on her race and gender.

39. Carolyn Reel, a white female employee with cancer, was allowed to take off work due to treatment. Joseph gave her the ability to come in early or stay late to make up loss time. Reel has no children.

40. Megan Jordan, a white female employee, was allowed to bring her children to the office and other staff members were happy to assist her. When Plaintiff brought her black child to the office, she was shunned by management.

41. After Plaintiff filed her Charge of Discrimination on or around January 24, 2020, the retaliation against her by Cheer increased.

42. Eventually Plaintiff was demoted and terminated under the false pretext related to COVID.

## COUNT I – SEX DISCRIMINATION/SEXUAL HARASSMENT

43. Paragraphs 1 through 42 are hereby re-alleged and incorporated herein

---

[1] The mission of KSI is to provide person-centered supports to assist people with disabilities in the pursuit of their potential in employment and meaningful participation in their communities.

by reference as if fully set forth herein.

44. Such acts as described about by Defendant, Cheer, constitute unlawful sex discrimination and sexual harassment against Plaintiff in violation of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

45. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of harassment, by and through its agents and employees, Plaintiff, Bianca Williams, has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

## COUNT I – RACE DISCRIMINATION/RACE HARASSMENT

46. Paragraphs 1 through 45 are hereby re-alleged and incorporated herein by reference as if fully set forth herein.

47. Such acts as described about by Defendant, Cheer, constitute unlawful sex discrimination and sexual harassment against Plaintiff in violation of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

48. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of harassment, by and through its agents and

employees, Plaintiff, Bianca Williams, has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

## COUNT II- RETALIATION

49. Paragraphs 1 through 48 are hereby re-alleged and incorporated herein by reference as if fully set forth herein.

50. Such acts as described above by Defendant, Cheer, its agents and employees constitute unlawful retaliation against Plaintiff for having complained of discrimination and harassment.

51. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of sexual harassment, by and through its agents and employees, Plaintiff, Debera Smith, has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

## COUNT III: FMLA RETALIATION

52. Paragraphs 1 through 51 are hereby re-alleged and incorporated herein by reference as if fully set forth herein.

53. Plaintiff met all of the eligibility requirements to qualify for up to twelve (12) weeks of unpaid, job-protected, leave per year for qualifying reasons.

54. Plaintiff was entitled to FMLA leave.

55. Plaintiff engaged in statutorily protected activity by applying for and taking leave under the FMLA.

56. Thereafter, Plaintiff suffered adverse employment decisions because she took leave.

57. These adverse decisions were made as a direct result of, and in retaliation for, Howell exercising her rights under the FMLA.

58. Defendant did not act in good faith, nor did it have any reasonable grounds for believing that its actions were in compliance with the FMLA.

59. Moreover, Defendant's proffered reason for engaging in the foregoing acts was merely pretext for its unlawful retaliatory actions against Plaintiff for availing herself of the rights afforded to her under the FMLA.

60. As a result of Defendant's retaliatory conduct, Plaintiff suffered lost compensation, including the loss of wages and benefits.

61. Plaintiff has and will continue to incur attorneys' fees and costs in this action, and is entitled to recovery of her attorneys' fees and costs pursuant to the FMLA. 29 C.F.R. § 825.400(C).

    a. Any other relief this Court deems just and proper.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter a judgment in her favor and against the defendant as follows:

a. Declare the conduct engaged in by the defendant be in violation of the plaintiff's statutory rights.

b. Ordering the rehiring of the plaintiff at a level which is commensurate with her time and experience, or in lieu thereof granting the plaintiff front pay, to compensate her for her pecuniary losses, which she will suffer as a result of the wrongful conduct of the defendant.

c. Award the plaintiff back pay compensation for her pecuniary losses from the date of the wrongful conduct described herein until the date of any judgment.

d. Award the plaintiff sufficient funds to compensate her for her losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

e. Award the plaintiff compensatory and punitive damages not otherwise specified.

f. Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

g. Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and;

h.    Such other and further relief as this Court feels proper.

**THE POLIQUIN FIRM, LLC**

<u>/s/ Ronald G. Poliquin</u>
Ronald G. Poliquin, Esquire (DE No. 4447)
1475 S. Governors Ave.
Dover, Delaware 19904
P: 302-702-5501
F: 302-213-0042
Attorney for Plaintiff

Date: September 13, 2021